**Thaddeus Donald EDMONSON, Plaintiff–Appellant,**

**v.**

**LEESVILLE CONCRETE COMPANY, INC., Defendant–Appellee.**

**No. 87–4804.**

United States Court of Appeals, Fifth Circuit.

Dec. 5, 1988.

Order on Grant of Rehearing En Banc Jan. 23, 1989.

---

James B. Doyle, Lake Charles, La., for plaintiff-appellant.

John B. Honeycutt, Jr., Steven C. Graalmann, Percy, Smith, Wilson, Foote, Walker & Honeycutt, Alexandria, La., for defendant-appellee.

Before WISDOM, GEE and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The issue is whether the guarantee of equal protection of the laws forbids the exercise of peremptory challenges on racial grounds by a private litigant in the trial of a civil case in federal district court. We hold that it does, thus extending the principle announced by the Supreme Court in *Batson v. Kentucky*.[1]

I.

Injured in an accident on a construction job at Fort Polk, Louisiana, a federal enclave, Thaddeus Donald Edmonson, a 34-year-old black male, sued Leesville Con-

---

**1.** 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

crete Company for negligence in federal district court.[2] The case was tried to a jury.

Edmonson used all three of his peremptory challenges to excuse members of the venire who were white. Leesville challenged peremptorily two prospective jurors who were black and one who was white. Citing *Batson*, Edmonson asked the district court to require Leesville to articulate a neutral explanation for the manner in which it had exercised its challenges. The district court denied the request on the ground that the *Batson* ruling did not apply to civil proceedings, and then proceeded to impanel a jury composed of eleven white jurors and one black juror. The jury rendered a verdict for Edmonson, assessing his total damages at $90,000, but because it found him 80% contributorily negligent, awarded him only $18,000. Edmonson seeks a new trial because of Leesville's alleged racial discrimination in its exercise of peremptory challenges.

## II.

In *Batson*, the Supreme Court held that the equal protection clause of the Fourteenth Amendment forbids the prosecutor in a state criminal action to exercise peremptory challenges to remove members of the defendant's race from the venire. A defendant in such a case, the Court noted, may establish a prima facie case of purposeful discrimination in the selection of the petit jury "solely on evidence concerning the prosecutor's exercise of peremptory challenges" at the trial.[3] To do so, the defendant must first show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove members of his race from the venire. Second, the defendant may rely on the indisputable fact that

"peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'"[4] Finally, the defendant must show that these facts and any other relevant circumstances "raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race."[5] In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. The Court stated, "We have confidence that trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors."[6]

"Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors."[7] After receiving the State's explanation, the trial court "will have the duty to determine if the defendant has established purposeful discrimination."[8]

While *Batson* was based on the equal protection clause of the Fourteenth Amendment, which applies only to the states, and the Constitution contains no equivalent express provision concerning federal governmental action, the due process clause of the Fifth Amendment, which applies to federal action, implies a like guarantee against the denial of equal protection of the laws by the federal government.[9] We must initially determine, therefore, whether the exercise of peremptory challenges by a private litigant in a civil action pending in federal court is a government action, to which the Fifth Amendment applies, or a private action, which the Constitution does not reach. If the action is

2. 28 U.S.C. § 1331.

3. 476 U.S. at 96, 106 S.Ct. at 1722–23.

4. *Id.,* 476 U.S. at 96, 106 S.Ct. at 1723 (citing *Avery v. Georgia,* 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953)).

5. *Id.,* 476 U.S. at 96, 106 S.Ct. at 1723.

6. *Ibid.*

7. *Ibid.*

8. *Id.,* 476 U.S. at 98, 106 S.Ct. at 1723–24.

9. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *United States v. Hawes,* 529 F.2d 472 (5th Cir.1976).

governmental in nature, we must then decide whether to extend the principle underlying *Batson* to civil cases.

### III.

The equal protection guarantee does not forbid discrimination by private persons. As the level of interaction and cooperation between private individuals and the state rises, however, it becomes increasingly difficult to discern precisely where private conduct ends and state action begins.[10] The Court has said, in *Burton v. Wilmington Parking Authority*,[11] "[T]o fashion and apply a precise formula for recognition of state responsibility under the Equal Protection Clause is an 'impossible task' which 'This Court has never attempted.' Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." The criterion, the Court later stated in *Moose Lodge No. 107 v. Irvis*,[12] is whether the government has " 'significantly involved itself with invidious discriminations.' "

In *Lugar v. Edmondson Oil Co.*,[13] the Court formulated more precisely its inquiry into state action: "[T]he first question is whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority." The "second question," *Lugar* stated, is whether, under the facts of the case, the private persons "may be appropriately characterized as 'state actors.' "[14] That requirement was met in *Lugar* because "a private party's joint participation with state offi-

cials ... is sufficient to characterize that party as a 'state actor'...."[15]

In a number of other cases the Court has traced the line that separates private from governmental action.

*Shelley v. Kraemer*[16] established that the equal protection clause forbids judicial enforcement of restrictive covenants based on race. Despite the fact that a restrictive covenant is a contractual arrangement between private parties, the Supreme Court held that enforcement of such private agreements by "judicial officers in their official capacities is to be regarded as action of the State."[17] Confronted by overlapping relationships between public and private actors, the Supreme Court in *Shelley* recognized that governmental action triggered by a private litigant retains its official character. Thus, the Court held in *Pennsylvania v. Board of Directors of City Trusts of the City of Philadelphia*,[18] state-appointed trustees may not enforce a provision in a will setting up a school for "poor white male orphans" by denying admission to a non-white person.

In *Tulsa Professional Collection Services v. Pope*,[19] the Court held that the state acts when "private parties make use of state procedures with the overt, significant assistance of state officials," as was the case when the executrix of an estate denied a claim made under a state nonclaim statute that became operative only after probate proceedings had been commenced. In that situation, the time bar was not self-executing; the "probate court is intimately involved throughout, and without that in-

---

**10.** *See* Brest and Levinson, Processes of Constitutional Decisionmaking at 821 (2d ed. 1982); Black, "State Action," Equal Protection and California's Proposition 14, 81 Harv.L.Rev. 69 (1967).

**11.** 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961) (citations omitted).

**12.** 407 U.S. 163, 173, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972) (quoting *Reitman v. Mulkey*, 387 U.S. 369, 380, 87 S.Ct. 1627, 1634, 18 L.Ed. 2d 830 (1967)); *see also Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed. 2d 477 (1974).

**13.** 457 U.S. 922, 939, 102 S.Ct. 2744, 2755, 73 L.Ed.2d 482 (1982).

**14.** *Ibid.*

**15.** *Id.*, 457 U.S. at 941, 102 S.Ct. at 2756.

**16.** 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

**17.** *Id.*, 334 U.S. at 14, 68 S.Ct. at 842.

**18.** 353 U.S. 230, 231, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957).

**19.** —— U.S. ——, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988).

volvement the time bar is never activated."[20]

In *Burton v. Wilmington Parking Authority,* the Court held that the exclusion of a black would-be patron from a restaurant located in a state-owned and operated parking facility was state action even though the decision to do so was made by the restaurant operator, a private concern. The state "effectively abdicate[d] its responsibilities," the Court held, by failing to censure racial discrimination occurring on its property, a duty that the state cannot "ignor[e]" or "fail[ ] to discharge[,] ... whatever the motive."[21]

28 U.S.C. § 1870 provides, "In civil cases, each party shall be entitled to three peremptory challenges." If the Congress had the poor judgment to enact a statute declaring, "Peremptory challenges may be used to excuse jurors on the basis of their race," there would be little doubt that the statute would be unconstitutional. This conclusion ineluctably follows from the decision in *Reitman v. Mulkey,*[22] in which the Supreme Court held unconstitutional California Proposition 14, an amendment to the State constitution permitting any person to decline to sell or lease property to another person "as he, in his absolute discretion, chooses." By adopting this amendment, the Supreme Court held, the state affirmatively sanctioned private discrimination as one of its basic policies. Interpreting 28 U.S.C. § 1870 to allow the exclusion of jurors because of their race would condone conduct that could not be explicitly allowed.

■ That the statutory right to challenge jurors is exercised by a private litigant does not of itself make the action private. The government is intimately involved in the process by which a litigant challenges a prospective juror: the government summons the venire to appear in court at a particular time and place; the right to peremptory challenges is granted by a federal statute; the challenges are invoked in the course of a judicial proceed-

ing, and on a facility operated by the government, usually in a federal courtroom or, for convenience, in the judge's chambers; they are not self-executing but are effected by the action of the judge; and the judge as government official acts in a court required by the Constitution to be open to the public which may thereby observe the court's toleration of the practice. The litigant exercises the peremptory challenge, but it is the judge, acting in a judicial capacity, who excuses the prospective juror.

Judicial oversight and administration of peremptory challenges thus involve more judicial process and government action than the amount found sufficient by the Supreme Court in *Lugar, Shelley, Tulsa Professional Collection Services,* and *Burton* to trigger state action. The Constitution that forbids judicial enforcement of covenants based on race equally prohibits judicial enforcement of peremptory challenges so motivated. The Constitution that forbids private parties to discriminate based on race through the use of a state nonclaim statute equally prohibits private parties from so discriminating through the use of a federal peremptory challenge statute. The Constitution that forbids a private restaurant on state-owned property to discriminate based on race equally prohibits a private party in a federal courtroom from so discriminating.

Responsible for impanelling the jury, the court, and hence, "the State[,] is not merely an observer of the discrimination, but a significant participant.... The only thing the State does not do is make the decision to discriminate. Everything else is done or supplied by the State,"[23] a New York state judge observed. By presiding over jury selection in his official, governmental capacity, a judge is intimately involved in the process that Tocqueville termed America's "greatest advantage" in "rub[bing] off th[e] private selfishness which is the rust

20. *Ibid.*

21. 365 U.S. at 725, 81 S.Ct. at 861.

22. 387 U.S. at 371, 87 S.Ct. at 1629.

23. *People v. Gary M,* 138 Misc.2d 1081, 526 N.Y. S.2d 986, 994 (1988).

of society." [24] By carrying out his duties in a way that permits peremptory challenges based on race, the rust of the judge's approval of discrimination rubs off onto society, corroding the national character by giving private prejudice the imprimatur of state approval.

Justice would indeed be blind if it failed to recognize that the federal court is employed as a vehicle for racial discrimination when peremptory challenges are used to exclude jurors because of their race. The government is inevitably and inextricably involved as an actor in the process by which a federal judge, robed in black, seated in a paneled courtroom, in front of an American flag, says to a juror, "Ms. X, you are excused." A litigant's decision to provoke the court's action by virtue of a statutorily accorded right does not disguise the official governmental character of the procedure as a whole.

### IV.

There are manifest differences between the nature of a criminal prosecution and a civil action, and the degree of governmental involvement in each. In a criminal prosecution, the government, state or federal, initiates the proceeding against an unwilling defendant. The government is the prosecutor, and the full weight of the state's panoply of personnel and resources is brought to bear against the accused. In a civil matter to which the state is not a party, the plaintiff initiates the proceeding and private parties are matched against each other. The state provides but the forum and the rules.

■ · Neither the equal protection clause nor the rationale of the *Batson* case, however, is limited to the state's involvement in criminal prosecutions. The principle of equal protection applies to governmental action in civil as well as criminal matters, federal as well as state. [25] While the Supreme Court in *Batson* considered only a defendant in a criminal case, its guiding precept is that a " 'State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause.' " [26] The "central concern of the Fourteenth Amendment," the Court affirmed, "was to put an end to governmental discrimination on account of race." [27]

The *Batson* court's holding that "[e]xclusion of black citizens from service as jurors constitutes a primary example of the evil the Fourteenth Amendment was designed to cure" [28] applies to civil no less than criminal proceedings. The *Batson* court itself provides the explanation: "Racial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try," [29] or, we add, the private litigant whose dispute they are called to adjudicate. "Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability impartially to consider evidence presented at a trial. A person's race simply 'is unrelated to his fitness as a juror'.... The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice." [30]

The peremptory challenge occupies as important a position in the trial procedure of civil as it does in the procedure of criminal cases. Racial prejudice has no more place in the federal courtroom on the days the court is conducting a civil trial than it

24. Tocqueville, Democracy in America (Vintage Books: 1831/1945) Vol. I., 295–96.

25. *Bolling v. Sharpe, supra,* n. 9.

26. *Batson,* 476 U.S. at 84, 106 S.Ct. at 1716, quoting *Swain v. Alabama,* 380 U.S. 202, 203–204, 85 S.Ct. 824, 826–27, 13 L.Ed.2d 759 (1965), and citing as authority at n. 3 14 other Supreme Court decisions.

27. *Id.,* 476 U.S. at 85, 106 S.Ct. at 1716.

28. *Ibid.*

29. *Id.,* 476 U.S. at 87, 106 S.Ct. at 1717.

30. *Id.,* 476 U.S. at 87, 106 S.Ct. at 1717–18 (citations and portions of text omitted).

does on the days when the same judge, seated at the same bench, in the same courtroom, is conducting a criminal trial.[31]

Three federal courts have considered the applicability of *Batson* to civil proceedings. The Eighth Circuit Court of Appeals expressed "strong doubts" that *Batson* is limited to criminal cases, yet left the question for another day.[32] In *Esposito v. Buonome*,[33] a district court case, Circuit Judge Meskill, sitting by designation, held that *Batson* was not controlling in a § 1983 action, citing the distinction between civil and criminal cases without expressly deciding whether the exercise of peremptory challenges in a civil case involves governmental action. The court's reasons for distinguishing *Batson*, however, suggest that the decision was based on Judge Meskill's conclusion that the litigant had not demonstrated governmental action.

A district judge in the same district court, however, reached the opposite result in *Clark v. City of Bridgeport*,[34] holding that "the equal protection analysis enunciated in *Batson* pertaining to use of peremptory challenges applies not only to criminal cases, but also to civil cases"[35] in which a state agency is a party and an assistant city attorney exercises the peremptory challenge on behalf of a city.

■ If we were to limit *Batson* to criminal cases, we would betray *Batson's* fundamental principle: the state's use, toleration, and approval of peremptory challenges based on race violates the equal protection clause. We, therefore, hold that the principle announced by the Supreme Court in *Batson* applies to civil cases as well.

## V.

As the Court observed with regard to the award of child custody in *Palmore v. Sidoti*,[36] "it would ignore reality to suggest that racial and ethnic prejudices do not exist or that all manifestations of those prejudices have been eliminated." Judges do not inhabit an ivory tower. Like others, we know that some members of any racial group acting as decision-makers in a dispute between a person of their own race and a person belonging to another race may tend to favor those who are like themselves over those who are different. This is prejudice, and that humans are prejudiced, however unworthy that emotion, cannot be denied.

In a contest, therefore, between persons of different races, advocates may have a strategic reason to seek the discharge of veniremen of the opposing litigant's race. The potential pervasiveness of racial prejudice and its influence on advocates' efforts to find a favorable audience is evinced by Edmonson himself who exercised, without objection from Leesville, all of his challenges against white jurors. The Constitution, however, condones neither the possible prejudice nor the equally racially-motivated attempt to escape presumed prejudice, which is itself a form of stereotyping. "The Constitution cannot control such prejudices but neither can it tolerate them," the Supreme Court stated in *Palmore*. "Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect."[37] If racially-motivated challenges are exercised by both parties, the remedy is not to condone them but to insist, when objection is made, that the guarantee of equal protection against all racial prejudice is enforced.

■ Our holding does not convert the right to exercise a peremptory challenge into a requirement that it be for cause. The peremptory challenge, as its very name

---

**31.** *See Maloney v. Washington*, 690 F.Supp. 687, N.D.Ill, Memorandum Opinion, vacated on other grounds, *Maloney v. Plunkett*, 854 F.2d 152 (7th Cir.1988).

**32.** *Wilson v. Cross*, 845 F.2d 163, 164 (8th Cir. 1988).

**33.** 642 F.Supp. 760 (D.Conn.1986).

**34.** 645 F.Supp. 890 (D.Conn.1986).

**35.** *Id.*, 645 F.Supp. at 896.

**36.** 466 U.S. 429, 433, 104 S.Ct. 1879, 1882, 80 L.Ed.2d 421 (1984).

**37.** *Ibid.*

implies, may be exercised for no reason at all, or for any reason, however capricious or whimsical, save to violate the Fourteenth Amendment: it may not be exercised to exclude a prospective juror because of race.

## VI.

■ As we have noted, Edmonson established that he is a member of a cognizable racial group and that Leesville exercised peremptory challenges to remove members of his race from the venire. Leesville seeks to avoid the inference of discrimination by asserting that it did not challenge one black person who did indeed sit on the jury. That one black person was acceptable to Leesville does not negate the possible inference that Leesville used two of its three challenges to remove black jurors because of their race in order to try its case before a jury with eleven white members.[38]

■ Whether or not Edmonson has established a prima facie case of racial discrimination, however, is a question for the district court in the first instance. The district court stated that it observed "no discrimination, no violation of the law in the selection *procedure*."[39] Reading this statement in context, we do not find that the district court determined, as *Batson* requires, whether, under the specific circumstances, Edmonson had established a prima facie case. We follow *Batson's* lead, and remand the case for further proceedings. If Edmonson should establish a prima facie case, then the district court must require Leesville to show that it had some neutral, that is, non-racial, reason for its challenges. If Leesville does not then come forward with a neutral explanation for its action, the district court shall order a new trial.

The case is REMANDED for further proceedings consistent with this opinion.

GEE, Circuit Judge, dissenting:

The sweeping result in today's case seems to me so unfortunate that I cannot join in it, even though the most dubious features of the majority opinion derive, not from the reasoning of my brethren, but from earlier decisions of the Supreme Court. Indeed, it may be arguable that—given those decisions—this result is unavoidable. Even so, because its effect is to impair severely the utility of a venerable and useful procedural device, for reasons that seem to me misguided, I voice a brief dissent. Long writing seems needless in any event, since it is unlikely that the Court will leave such an issue as this dangling.

The first subsidiary issue posed by the majority in the body of the opinion is "whether the exercise of peremptory challenges by a private litigant in a civil action pending in federal court is a government action." (Ms. op. 4). One would think that to state the issue in this manner would be to answer it: unlike the prosecutor in *Batson*,[1] counsel in this case and his client are private parties, as are their adversaries, and the court took no part beyond permitting venire members dismissed by counsel to depart. Under the two-part test enunciated by the Court in *Lugar*,[2] however, it would be difficult to maintain that the strikes exercised by counsel in this case did not constitute "the exercise of a right or privilege having its source in state authority." 457 U.S. at 939, 102 S.Ct. at 2755.

It seems far more doubtful, however, that the second prong of the test is satisfied: that private counsel, striking the venire in a civil case, is a "state actor." *Ibid.* Indeed, if a public defender employed by

---

38. *See United States v. Battle,* 836 F.2d 1084, 1085–86 (8th Cir.1987); *United States v. Clemons,* 843 F.2d 741, 746 (3d Cir.1988); *Stanley v. Maryland,* No. 82–1987 (Md.Ct.App.1988); *State v. Brinkley,* 42 Cr.L. 2145, 48 (Md.Ct.App.W.Dist. 1987). *But see State v. Vincent,* 42 Cr.L. 2277 (Md.Ct.App.E.Dist.1988).

39. Trial Transcript at 61 (emphasis added.)

1. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

the state is not such an actor, as the Supreme Court held in *Polk County v. Dodson,*[3] it seems clear that privately-retained counsel is not. This leaves as the requisite state actor only the trial judge, who performs the merely ministerial function of excusing the veniremen cut by counsel from further attendance in the case. It is difficult to conceive of a more minimal involvement than this—one which requires the exercise of no judgment or discretion, one which consists of nothing more than permitting the excused to depart. I would not hold that this mere standing aside constitutes "action," especially in view of such Supreme Court pronouncements as that found in *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982), that "a state normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement ... that the choice must ... be deemed that of the state" and that "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the state responsible for those initiatives under the ... Fourteenth Amendment."

In *Batson,* the state actor was the prosecuting attorney, the very embodiment of the state, exercising its power and acting in its interest in all respects. In today's case, no such figure is to be found: only private counsel, who holds no state post, and the trial judge, who took no action of any significance. I would not find state action here.

Nor can I agree that exercising strikes in a given case along ethnic lines necessarily involves or gives the appearance of involving derogatory racial views, as does the attempt to exclude black jurors generally from the venire. As Judge Garwood explained for our en banc Court, in a celebrated passage quoted by then Chief Justice Burger in his *Batson* dissent:

"Exclusion from the venire summons process implies that the government (usually the legislative or judicial branch) ... has made the general determination that those excluded are unfit to try any case. Exercise of the peremptory challenge, by contrast, represents the discrete decision, made by one of two or more opposed litigants in the trial phase of our adversary system of justice, that the challenged venireperson will likely be more unfavorable to that litigant in that particular case than others on the same venire.

"Thus, excluding a particular cognizable group from all venire pools is stigmatizing and discriminatory in several interrelated ways that the peremptory challenge is not. The former singles out the excluded group, while individuals of all groups are equally subject to peremptory challenge on any basis, including their group affiliation. Further, venire-pool exclusion bespeaks a priori across-the-board unfitness, while peremptory-strike exclusion merely suggests potential partiality in a particular isolated case. Exclusion from venires focuses on the inherent attributes of the excluded group and infers its *inferiority,* but the peremptory does not. To suggest that a particular race is unfit to judge in any case necessarily is racially insulting. To suggest that each race may have its own special concerns, or even may tend to favor its own, is not."

*United States v. Leslie,* 783 F.2d 541, 554 (5th Cir.1986) (en banc), quoted at 476 U.S. 79, 122–23, 106 S.Ct. 1712, 1736–37, 90 L.Ed.2d .69 (1986).

Finally, I am unable to avoid the conclusion that first the Supreme Court, with its decision in *Batson,* and now our panel, with today's case, have leapt halfway across a logical chasm and come to rest in midair. The essence of a peremptory challenge is that it need not be excused or justified; indeed, the challenger himself may *have* no articulable reason for his action. Every lawyer who has tried cases for any length of time knows this, would be forced to

---

**3.** 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981).

admit, if pressed, that on occasion he has exercised strikes on no firmer basis than "I didn't like the way he looked at my client" or "Her tone of voice didn't sound right." Hunches, implicit feelings, even crochets—some always strike barbers, or housepainters, or ironworkers—are the stuff of peremptory challenges. But who would credit such a reason, if advanced as the basis for challenging a member of an ethnic minority? Nor does equal opportunity for members of the various ethnic groups to serve as jurors result from today's decision, rather the contrary; for counsel may well think twice about lodging a challenge for which he must possess (or invent) suitable, rational reasons, as opposed to one for which he need produce none.

What remains after today's holding is not the peremptory challenge which our procedure has known for decades—or not one which can be freely exercised against all jurors in all cases, at any rate. Justice Marshall would dispense with strikes entirely, and perhaps this will be the final outcome. *Batson*, 476 U.S. at 106–08, 106 S.Ct. at 1728–29 (Marshall, J., concurring). In this much at least he is surely correct, that we must go on or backward; to stay here is to rest content with a strange procedural creature indeed: a challenge for semi-cause, exercisable differentially as to jurors depending on how the ethnic group to which they belong correlates with that of the striker's client—a skewed and curious device, exercisable without giving reasons in some cases but not in others, all depending on race.

### ON SUGGESTION FOR REHEARING EN BANC

Before CLARK, Chief Judge, GEE, RUBIN, REAVLEY, POLITZ, KING, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, and DUHE, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the suggestion for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that this cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.