599 So.2d 64 (1992)
Mark Norman Pete LEMLEY
v.
STATE.
6 Div. 25.
Court of Criminal Appeals of Alabama.
January 17, 1992.
Rehearing Denied February 28, 1992.
Certiorari Denied June 12, 1992.
*66 Michael G. Trucks, Fairfield, and J.T. Simonetti, Jr., Birmingham, for appellant.
James H. Evans, Atty. Gen., and Stephen N. Dodd and Sandra J. Stewart, Asst. Attys. Gen., for appellee.
Alabama Supreme Court 1910989.
BOWEN, Judge.
Mark Norman Pete Lemley, the appellant, was indicted for first degree assault. After a jury trial, he was convicted of the lesser offense of assault in the third degree. He was sentenced to imprisonment for one year, was fined $499, and was ordered to make restitution to the victim in the amount of $4,091.35.
It is undisputed that the appellant, a 69-year-old white male, shot Percy Smith, a 14-year-old black youth. The victim was one of 6 to 10 black youths who were hunting squirrels with B-B guns and pellet guns in the vicinity of the appellant's home on October 13, 1987. The group saw a squirrel run up a tree in the appellant's yard. When the animal ran into a metal box in the tree, the youths tried to flush him out of the box by throwing rocks and bottles. Some of those missiles landed on the tin roof of the appellant's house and awakened the appellant, who lived alone and was inside taking a nap. When the appellant, who was nearsighted, suffered from glaucoma, and was not wearing his glasses, looked outside to see what was going on, he observed a group of black males with guns.
At trial, the appellant testified that one of the group was pointing a gun at him, and four or five other members of the group had guns in their hands, some of which were aimed at his house. The appellant testified that he believed his home was "under siege," and that he "fear[ed] for [his] life and [his] property." (R. 172.) The appellant retrieved a pistol from his bedroom, opened his back door, and fired the pistol into the crowd of young men. The youths fled and, about half a block away, Percy Smith realized that he had been shot. A .357 Magnum bullet had pierced the left side of his chest, penetrated his liver, and exited through his back. The attending physician testified that Smith's injuries necessitated surgery, required a nine-day hospital stay, and were life-threatening.

I
This case presents two issues of first impression in Alabama: (1) whether the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), apply to defense strikes of black veniremembers; and (2) whether, in the absence of any objection by the State regarding a defendant's use of peremptory challenges to exclude blacks, the trial court, on its own motion, may determine that a prima facie case of discrimination exists, require the defense to explain its strikes, and restore any veniremembers struck for racially discriminatory reasons to the jury. We answer both questions in the affirmative.
The record reveals that prior to trial there was some press coverage suggesting that the assault may have been racially motivated. The jury venire consisted of 35 persons, of whom 10 (20.5%) were black. Defense counsel used seven of his ten peremptory challenges to remove blacks from *67 the venire. The State used all of its peremptory challenges to remove whites.
After both sides had exercised their peremptory strikes, the trial judge asked defense counsel to give the reasons for his strikes of black veniremembers. Acknowledging that he "underst[oo]d what Batson says" (R. 6), that he "realize[d] Batson deals strictly with the prosecutor" (R. 8), and that he was "going beyond Batson" (R. 12), the trial judge stated:
"I don't intend to preside over any trial where I have reason to believe, or know, that race enters the picture, whether it be from the defense or from the prosecution. Fair has no side.... Citizens have the right to come up here and be on a jury panel without having to be eliminated and be discriminated against because of race, whether white or black, whether it's the prosecutor or the defense doing it." (R. 6, 7.)
The trial judge elicited from defense counsel the reasons for his strikes of black veniremembers:
"THE COURT: Mr. Hunter, number 110, tell me about that.
"[DEFENSE COUNSEL]: He doesn't own any weapons. He's young and a comparable age to the alleged victims.
"THE COURT: How old?
"[DEFENSE COUNSEL]: Between 14 and 19. He's probably in his twenties. That's why I struck him.
"THE COURT: Warren, number 206?
"[DEFENSE COUNSEL]: Single, struck me as the motherly type who might feel sympathy for young boys who have been shot.
"THE COURT: What about Woods?
"[DEFENSE COUNSEL]: He did not own any guns.
"THE COURT: 133, Mathison?
"[DEFENSE COUNSEL]: She's a librarian. Works with students of the same age of the victim.
"THE COURT; I didn't hear you ask one prospective juror if they had children.
"[DEFENSE COUNSEL]: She's a librarian.
"THE COURT: If that was such a crucial question, then it seems to me that you would have wanted to know if they were a mother and if they had children that age. I'm not buying that.
"[DEFENSE COUNSEL]: I can explain
"THE COURT; Explain Sledge.
"[DEFENSE COUNSEL]: Strictly a hunch. The way she answered questions, even when she was asked about
"THE COURT: Dismukes?
"[DEFENSE COUNSEL]: Security guard. Seemed he carried a gun only through his work, but found it somewhat distasteful.
"THE COURT: I believe your question was, do you have a gun for any reason other than protection
"[DEFENSE COUNSEL]: His answer was, the reason I carry it.
"THE COURT: It did not mean it was distasteful. How about Clark?
"[DEFENSE COUNSEL]: Young. That's it."
". . . .
"THE COURT: ... Ms. Sledge was deleted because she allegedly had an attitude. That's something I can't measure.
"[DEFENSE COUNSEL]: It was a gut level feeling." (R. 4-8.)
Although the record is not entirely clear, it appears that the trial court ordered two of the black veniremembers who had been removed by the defense (Ms. Sledge and Mr. Dismukes) to be restored to the jury.
Batson held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." Batson, 476 U.S. at 89, 106 S.Ct. at 1719. In the subsequent decisions of Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), and Edmonson v. Leesville Concrete Co., ___ U.S. ___, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the Supreme Court expanded the scope of Batson by holding that a white defendant has standing to object to the prosecutor's discriminatory strikes of black *68 veniremembers and that Batson is applicable in civil cases.
In Powers, the Court held that "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race." ___ U.S. at ___, 111 S.Ct. at 1366. The Court explained that the Equal Protection Clause safeguards not only the rights of the criminally accused, but also the right of individual jurors not to be excluded from jury service on account of race, and the right of society as a whole to rely on the integrity of the judicial system.
"In Batson, we spoke of the harm caused when a defendant is tried by a tribunal from which members of his own race have been excluded. But we did not limit our discussion in Batson to that one aspect of the harm caused by the violation. Batson `was designed "to serve multiple ends,"' only one of which was to protect individual defendants from discrimination in the selection of jurors. Allen v. Hardy, 478 U.S. 255, 259, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986) (per curiam) (quoting Brown v. Louisiana, 447 U.S. 323, 329, 100 S.Ct. 2214, 2220, 65 L.Ed.2d 159 (1980)). Batson recognized that a prosecutor's discriminatory use of peremptory challenges harms the excluded jurors and the community at large. 476 U.S., at 87, 106 S.Ct., at 1718."
Powers v. Ohio, ___ U.S. at ___, 111 S.Ct. at 1368. See also Ex parte Bird & Warner, 594 So.2d 676 (Ala.1991); Ex parte Bankhead, 585 So.2d 112 (Ala.1991).
In Edmonson, the Court held that the principles of Batson were applicable to private litigants in a civil suit. The Court observed:
"While the[] decisions [culminating in Batson] were for the most part directed at discrimination by a prosecutor or other government officials in the context of criminal proceedings, we have not intimated that race discrimination is permissible in civil proceedings. Indeed, discrimination on the basis of race in selecting a jury in a civil proceeding harms the excluded juror no less than discrimination in a criminal trial. In either case, race is the sole reason for denying the excluded venireperson the honor and privilege of participating in our system of justice."
Edmonson v. Leesville Concrete Co., ___ U.S. at ___, 111 S.Ct. at 2082 (citations omitted). Two years earlier, our own Alabama Supreme Court had reached the same result as the Edmonson Court in Thomas v. Diversified Contractors, Inc., 551 So.2d 343 (Ala.1989). There, Justice Adams, concurring specially, noted that
"[i]f we were to limit Batson to criminal cases, we would betray Batson's fundamental principle: the state's use, toleration, and approval of peremptory challenges based on race violates the equal protection clause."
Thomas v. Diversified Contractors, Inc., 551 So.2d at 348 (Adams, J., concurring specially) (quoting Edmonson v. Leesville Concrete Co., 860 F.2d 1308, 1314 (5th Cir.1988), reversed, 895 F.2d 218 (5th Cir. 1990) (en banc), reversed, ___ U.S. ___, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991)).
Following the same reasoning, we conclude that if we were to limit our scrutiny of allegations of racial discrimination in the selection of the jury in a criminal case to only the prosecutor, we would be betraying not only the fundamental principles of Batson, but also the clear dictates of Powers, Edmonson, and Thomas. Whatever the identity of the striking party and whatever the nature of the litigation, the use of racial stereotypes in striking a jury is equally harmful to the excluded jurors and to society.
"The quiet rationality of the courtroom makes it an appropriate place to confront race-based fears or hostility by means other than the use of offensive stereotypes. Whether the race generality employed by litigants to challenge a potential juror derives from open hostility or from some hidden and unarticulated fear, neither motive entitles the litigant to cause injury to the excused juror."
Edmonson v. Leesville Concrete Co., ___ U.S. at ___, 111 S.Ct. at 2088.
*69 We now hold, as has every other appellate court that has considered the issue,[1] that the jury selection standards announced in Batson, Powers, and Edmonson also apply to the defense in a criminal case. This conclusion follows logically from those three cases, as Justice Scalia, dissenting in Edmonson, observed:
"In criminal cases Batson v. Kentucky already prevents the prosecution from using race-based strikes. The effect of today's decision (which logically must apply to criminal prosecutions) will be to prevent the defendant from doing soso that the minority defendant can no longer seek to prevent an all-white jury, or to seat as many jurors of his own race as possible."
Edmonson v. Leesville Concrete Co., ___ U.S. at ___, 111 S.Ct. at 2095 (Scalia, J., dissenting) (emphasis in original, citation omitted). Our holding also follows inescapably from decisions of our own Supreme Court interpreting the state constitution and from our statutory requirements. See Ex parte Branch, 526 So.2d 609 (Ala.1987); Ex parte Jackson, 516 So.2d 768 (Ala. 1986).
"Sections 1, 6, and 22, Ala. Const. 1901, combine to guarantee equal protection of the laws. Analysis of equal protection issues under the United States Constitution is equally applicable to those same issues under the Alabama Constitution."
Ex parte Jackson, 516 So.2d 768, 772 (Ala. 1986) (citation omitted).
The statutory requirements concerning juries are found in Chapter 16 of Title 12 of the Alabama Code of 1975. Article 2A of that chapter is entitled "Qualifications and Selection of Jurors Generally" and contains the following declaration of policy: "It is the policy of this state ... that all qualified citizens have the opportunity, in accordance with this article, to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose." Ala.Code 1975, § 12-16-55. The next section of Article 2A, § 12-16-56, provides: "A citizen shall not be excluded from jury service in this state on account of race, color, religion, sex, national origin, or economic status." (Emphasis added.) Although §§ 12-16-55 and 12-16-56 are within Article 2A instead of Articles 4 and 5, which govern the selection of jurors in particular criminal and civil cases, respectively, the principles embodied in those sections are, in this Court's opinion, also applicable to the process of striking a petit jury.
In addition, we also hold that a trial judge is authorized to conduct a Batson hearing, even in the absence of an objection by the State to defense counsel's exercise of his peremptory strikes. "[B]ecause racial discrimination in the selection of jurors `casts doubt on the integrity of the judicial process,' Rose v. Mitchell, 443 U.S. 545, 556, 99 S.Ct. 2993, 3000, 61 L.Ed.2d 739 (1979), and places the fairness of a criminal proceeding in doubt," Powers v. Ohio, ___ U.S. at ___, 111 S.Ct. at 1371, the trial judge, as the presiding officer of the court, should take the necessary steps to ensure that discrimination will not mar the proceedings in his courtroom. "When blacks are excluded from jury service on *70 account of their race, the Supreme Court has long recognized that the discriminatory actor is the trial court." Fludd v. Dykes, 863 F.2d 822, 828 (11th Cir.), cert. denied, 493 U.S. 872, 110 S.Ct. 201, 107 L.Ed.2d 154 (1989) quoted in Thomas v. Diversified Contractors, Inc., 551 So.2d 343, 348 (Ala. 1989) (Adams, J., concurring specially).
When, as in this case, the trial judge, in the exercise of his sound discretion, suspects that either the prosecutor or defense counsel has exercised his or her peremptory strikes in a racially discriminatory manner, the judge has the authority to question the use of those apparently racially discriminatory jury strikes.
"Active discrimination ... during [the jury selection] process condones violations of the United States Constitution within the very institution entrusted with its enforcement, and so invites cynicism respecting the jury's neutrality and its obligation to adhere to the law. The cynicism may be aggravated if race is implicated in the trial, ... as with an alleged racial motivation of the defendant or a victim."
Powers v. Ohio, ___ U.S. at ___, 111 S.Ct. at 1371. In Powers, the Court observed that
"[t]he overt wrong [of excluding a juror based on race] ... casts doubt over the obligation of the parties, the jury, and indeed the court, to adhere to the law throughout the trial of the cause."
Powers v. Ohio, ___ U.S. at ___, 111 S.Ct. at 1371 (emphasis added). In Edmonson, the Court found that
"Without the direct and indispensable participation of the judge, who beyond all question is a state actor, the peremptory challenge system would serve no purpose. By enforcing a discriminatory peremptory challenge, the court `has not only made itself a party to the [biased act], but has elected to place its power, property, and prestige behind the [alleged] discrimination.' In so doing, the government has `create[d] the legal framework governing the [challenged] conduct,' and in a significant way has involved itself with invidious discrimination."
Edmonson v. Leesville Concrete Co., ___ U.S. at ___, 111 S.Ct. at 2085 (brackets in original) (citations omitted).
The notion that by allowing racial discrimination to occur, the trial judge actually becomes a part of that discrimination is also applicable to the trial judge who, in a case with racial overtones, recognizes a racial pattern to counsel's peremptory strikes yet takes no steps to inquire into counsel's motivation. By closing his eyes to the possible discrimination, the judge, "in a significant way has involved [him]self with invidious discrimination." Id. We do not find that the State's failure to object to defense counsel's strikes was a barrier to the circuit court's action here. The trial judge's sua sponte Batson inquiry in 1987, and his observation three years before Powers and four years before Edmondson, that "[c]itizens have the right to come up here and be on a jury panel without having to be eliminated and be discriminated against because of race, whether white or black, whether it's the prosecutor or the defense doing it" (R. 7), foreshadowed the basis for the holdings of both Powers and Edmonson, namely: the Equal Protection Clause guarantees the right of the individual juror not to be excluded from jury service on the basis of race. In 1990 and 1991, the Supreme Court voiced the same concern about the indignity and embarrassment to jurors as this Alabama trial judge expressed in 1987:
"If peremptory challenges based on race were permitted, persons could be required by summons to be put at risk of open and public discrimination as a condition of their participation in the justice system."
Edmonson v. Leesville Concrete Co., ___ U.S. at ___, 111 S.Ct. at 2087.
By requiring the defense to come forward with reasons for its strikes of black veniremembers, the circuit court implicitly found a prima facie case of racial discrimination. That finding was warranted considering the implications present in the record that this offense had racial over-tones *71 and the number of blacks struck by the defense. The trial judge's further determination that the strikes of Ms. Sledge and Mr. Dismukes were racially motivated is supported by the record. Defense counsel's "gut level feeling" or "hunch" about Ms. Sledge is the very type of reason condemned by Batson. It was not "a clear, specific, and legitimate reason for the challenge which relate[d] to the particular case to be tried." Ex parte Branch, 526 So.2d at 623 (emphasis omitted). "[U]narticulated `gut feelings' about a veniremember will not rebut a Branch challenge.... Indeed, these `seat-of-the-pants instincts' may often be just another term for racial prejudice." Ex parte Bird & Warner, 594 So.2d at 684.
The trial judge could well find that defense counsel's "failure to engage [female jurors] in any meaningful voir dire" on the subject of whether they had children the same age as the victim, or to inquire of Mr. Dismukes whether his carrying a gun in his employment was "distasteful" to him, was "evidence that the explanation[s were] a sham and a pretext for discrimination." Ex parte Bird & Warner, 594 So.2d at 683.
The circuit court committed no error by conducting a sua sponte Batson inquiry, by concluding that counsel had not rebutted the presumption of racial discrimination, and by restoring two of the stricken black veniremembers to the jury.

II
The appellant's statement to the police was properly admitted into evidence.
Officer Christine Miller testified that she and two other officers were dispatched to the appellant's address in response to the report of a shooting there. Miller knocked on the door, and when the appellant opened it, she asked him if the officers "could come in and speak with him for a moment." (R. 117.) The appellant said "yes," opened the door, and let them inside. The officers did not have their weapons drawn and did not use any threatening gestures towards the appellant. They asked if the appellant "could tell [them] anything about the shooting that had occurred earlier." (R. 118.) Officer Miller testified that the appellant made the following statement:
"He told us at that time that he had been asleep, heard some noises, had gotten up and went outside and saw about nine boys outside with guns, and that he felt his house was under attack and went back inside his house and got his gun, went back outside and fired one shot." (R. 119.)
The appellant argues that this statement should not have been admitted into evidence at his trial because it was obtained in violation of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Miranda, which bars the use of unwarned statements by a suspect during custodial interrogation, does not apply here because the appellant was not in custody when he first spoke to Officer Miller. In Miranda, the Court stated:
"General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present."
Miranda v. Arizona, 384 U.S. at 477-78, 86 S.Ct. at 1629-30.
"It is the compulsive aspect of custodial interrogation, and not the strength or content of the officer's suspicions at the time the questioning was conducted, which led the Court to impose the Miranda requirements with regard to custodial questioning." Finch v. State, 518 So.2d 864, 867 (Ala.Cr.App.1987). "The Court has `explicitly recognized that Miranda warnings are not required "... because the questioned person is one whom the police suspect."' California v. Beheler, 463 U.S. [1121] at 1125, 103 S.Ct. [3517] at 3520 [77 L.Ed.2d 1275 (1983),] (quoting Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977))." Finch, 518 So.2d at 867. Although "[a]ny interview of one suspected *72 of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime," Oregon v. Mathiason, 429 U.S. at 495, 97 S.Ct. at 714 (footnote omitted), "[i]t is settled that the safeguards prescribed by Miranda become applicable [only when] a suspect's freedom of action is curtailed to a `degree associated with formal arrest.'" Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983)).
The circumstances of the present case do not approach that degree of restraint. The appellant was in familiar surroundings, showed no reluctance to allow the officers in his home, and was asked a brief, routine, and non-threatening question. Compare Finch v. State, 518 So.2d at 868 (factors to be considered in determining whether suspect is in custody for purposes of Miranda). See also Truex v. State, 282 Ala. 191, 192, 210 So.2d 424, 425 (1968) (Miranda not implicated when officer asked accused "What happened?" at scene of homicide); Bui v. State, 551 So.2d 1094, 1108 (Ala.Cr.App.1988), affirmed, 551 So.2d 1125 (Ala.1989), vacated on other grounds, ___ U.S. ___, 111 S.Ct. 1613, 113 L.Ed.2d 712 (1991) (accused's answer to officer's general investigatory inquiry, at scene of recent homicide, as to what had happened to accused's children not obtained in violation of Miranda); Hubbard v. State, 500 So.2d 1204, 1224-25 (Ala.Cr. App.), affirmed, 500 So.2d 1231 (Ala.1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1591, 94 L.Ed.2d 780 (1987) (no Miranda warnings required before general investigatory questioning by officers dispatched to scene of homicide); Hammett v. State, 482 So.2d 1330, 1334 (Ala.Cr.App.1985) (Miranda warnings not required when accused was visited at his home by medicaid investigators, invited them inside, and made incriminating statements in course of conversation with them); Primm v. State, 473 So.2d 1149, 1158 (Ala.Cr.App.1985) (officer's inquiries at accused's home were investigatory rather than accusatory and did not require Miranda warnings); Jackson v. State, 412 So.2d 302, 306-07 (Ala.Cr.App. 1982) (Miranda warnings not required when officers who were conducting general on-the-scene investigation of recent homicide asked, "What happened?" and accused gave an incriminating response); Blackburn v. State, 372 So.2d 908, 911 (Ala.Cr. App.1979) (officer who arrived at accused's residence to investigate a burglary not required to give accused Miranda warnings before asking if certain property belonged to him).

III
The trial judge committed reversible error in refusing to instruct the jury on the principles of self-defense. Those principles, as they relate to the facts of this case, are codified at Ala.Code 1975, § 13A-3-23:
"(a) A person is justified in using physical force upon another person in order to defend himself ... from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for the purpose. A person may use deadly physical force if the actor reasonably believes that such other person is:

"(1) Using or about to use unlawful deadly physical force;

". . . .
"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if it reasonably appears or he knows that he can avoid the necessity of using such force with complete safety:
"(1) By retreating, except that the actor is not required to retreat:

"a. If he is in his dwelling or at his place of work and was not the original aggressor." (Emphasis added).
The appellant was entitled to a charge on self-defense because he presented evidence that he believed one of the group of individuals outside his house was *73 aiming a gun at him and was "about to use unlawful deadly physical force" against him. He was not required to retreat from the perceived attack because one assaulted in his own dwelling is not bound to retreat before defending himself. Walker v. State, 205 Ala. 197, 200, 87 So. 833, 835 (1921).
At trial, the appellant's attorney objected to the court's failure to charge generally on self-defense, as well as to the court's refusal to give the following specific written requested charges:
"1. I charge you ladies and gentlemen of the jury, if you are reasonably satisfied from the evidence that the defendant proved that he had reasonable grounds for apprehending a present assault, the defendant must be held not guilty of the accusation brought against him.
"2. I charge you ladies and gentlemen of the jury, if you are reasonably satisfied from the evidence that the defendant had an honest belief of apprehending a present assault, the defendant must be held not guilty of the accusation brought against him.
"3. I charge you ladies and gentlemen of the jury, if you are reasonably satisfied from the evidence that the defendant did not shoot willingly but shot only to repel or prevent an assault which he honestly believed was being made against him, the defendant must be held not guilty of the accusation brought against him." (R. 285) (emphasis added).
The requested charges were properly refused because none of them, standing alone, stated a correct principle of law. See Howard v. State, 420 So.2d 828 (Ala. Cr.App.1982), wherein this Court made the following observation:
"The law requires that a belief of imminent peril and urgent necessity to slay in self-defense, though it may be based on appearances, must be both well-founded and honestly entertained. Williams v. State, 161 Ala. 52, 59, 50 So. 59 (1909). A merely `honest' belief, unless a reasonable one, that the killing was necessary, will not make it justifiable.
"`It is not an honest, but a reasonable belief, that justifies. An honest [belief] may not be a reasonable belief; it may be the offspring of fear, alarm, or cowardice, or it may be the result of carelessness, and irrational. A reasonable belief, generated by the attendant circumstancescircumstances fairly creating ithonestly entertained, will justify a homicide; but not an irrational belief, however honest it may be.' Holley v. State, 75 Ala. 14, 19 (1883)."
Howard v. State, 420 So.2d at 832. Because none of the requested charges stated that the appellant must have honestly and reasonably believed he was in danger of imminent attack, all were correctly refused.
In addition, the charges were erroneous because they implied that the appellant was entitled to use deadly physical force against any assault ("a present assault"), rather than against what he honestly and reasonably believed to be an imminent deadly assault ("unlawful deadly physical force"). See Ala.Code 1975, § 13A-3-23(a)(1) ("A person may use deadly physical force if the actor reasonably believes that such other person is ... [u]sing or about to use unlawful deadly physical force").
The trial court refused to give not only the specific charges requested by the appellant, but also any other instructions on the law of self-defense, based on the court's determination that the appellant had presented no evidence of self-defense. The record reveals the following discussion during the charge conference:
"THE COURT: I believe Mr. Lemley's testimony was that he was in reasonable fear of his life and property. Your [defense counsel's] question was were you in fear of your life and property. You [defense counsel] never separated it. I don't think you can use deadly physical force to defend your property. You've put the two together and the record will show your question, you put the two together, life and property. He has no right to defend his property with deadly force, does he?

*74 "[DEFENSE COUNSEL]: No, sir. But he has the right to defend his life.
"THE COURT: But there's been no testimony here that he was defending his life.
"[DEFENSE COUNSEL]: Yes, sir. When you defend your life and property. You may defend both at the same time." (R. 218-19.)
The trial court erred by finding that the appellant presented no evidence of self defense. The testimony that the appellant "feared for his life and his property" sufficiently presented a jury question on the issue whether the appellant reasonably believed that deadly physical force was about to be used against him. If there is any evidence to show a hostile demonstration that can be reasonably considered as having placed the accused in apparent imminent danger of his life, the issue of self-defense is for the jury. Turner v. State, 160 Ala. 40, 43, 49 So. 828, 829 (1909). "The question as to whether or not the circumstances in which the parties were at the time the fatal blow was stricken were such as to impress a reasonable man that the defendant was in imminent danger of losing his life or suffering great bodily harm, and whether or not the defendant entertained such belief were inferential facts to be drawn by the jury." Kennedy v. State, 240 Ala. 89, 91, 196 So. 884, 885 (1940). Whether the accused was in imminent peril at the time he shot the victim is a question of fact for the jury. Cook v. State, 46 Ala.App. 663, 665, 248 So.2d 158, 160 (1971). It is solely for the jury to determine whether the inference that accused was in actual or apparent immediate peril is reasonable. Domingus v. State, 94 Ala. 9, 13, 11 So. 190, 192 (1891).
"The rule of self-defense is that persons may and must act on the reasonable appearance of things. While it is not required that where a person is menaced he must wait until a weapon is presented ready for deadly execution, yet the danger must be real or so manifestly apparent as to create a reasonable belief of presently impending peril to life or limb. In determining this question evidence most favorable to the defendant should be considered and if there is the slightest evidence tending to prove a hostile demonstration which can be reasonably interpreted as placing the accused, at the time of the killing, in apparent imminent danger to life or other grievous bodily harm then the matter of self-defense becomes a question of fact for the jury."
Byrd v. State, 257 Ala. 100, 104, 57 So.2d 388, 391 (1952). See also Raines v. State, 455 So.2d 967, 974 (Ala.Cr.App.1984).
Although the trial court correctly refused to give the appellant's specific written requested charges, it erred by failing to instruct the jury on the principles of self-defense. For this error, the appellant is entitled to a new trial.

IV
The appellant argues that the trial court erroneously restricted his closing argument to the jury.
One of the State's witnesses testified, on cross-examination by defense counsel, that he knew "shooting [pellet] guns in the city limits [was] illegal." (R. 79-80.) When defense counsel sought to argue, in closing to the jury, that the firing of pellet guns was prohibited by local ordinance, the trial court instructed him not to make that argument because (1) there was no evidence of any ordinance and (2) even if there were such an ordinance, it would be irrelevant to the facts of this case.
Control of closing argument rests in the broad discretion of the trial judge, subject to review only for abuse. Saffold v. State, 485 So.2d 806, 808 (Ala. Cr.App.1986). There was no abuse here. First of all, the trial court was, strictly speaking, correct that there was no legal proof of an ordinance relating to pellet guns. Testimony by a witness for the State that he knew "shooting [pellet] guns in the city limits [was] illegal" did not "prove" the ordinance. See Ala.Code 1975, § 12-21-95 (mode of proving municipal ordinances).
Moreover, to jurors properly instructed on the principles of self-defense under the facts of this case, the existence *75 of a pellet gun ordinance would be irrelevant in determining the only issue before them, namely: whether the appellant "reasonably believe[d] that [one of the group of youngsters was] using or about to use unlawful deadly physical force" against him. See Ala.Code 1975, § 13A-3-23(a)(1). The lawfulness of pellet guns has no bearing on that question. The right of self-defense depends upon whether the accused reasonably believes himself in imminent peril from the use of "unlawful deadly physical force." If the force which arguably justified the appellant's right of self-defense was "unlawful" in this case, it was not because the weapon was prohibited by ordinance, but because the weapon was aimed at the appellant. The term "unlawful" in § 13A-3-23 refers to the manner of use of an implement, not its inherent nature or statutory legitimacy.
The judgment of the circuit court is reversed for the reason stated in Part III of this opinion. This cause is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
McMILLAN and MONTIEL, JJ., concur.
TAYLOR, J., concurs in result only.
PATTERSON, P.J., concurs in part and dissents in part.
TAYLOR, Judge, concurring in result only.
While I concur with the decision of the majority to reverse this case for the reasons stated in part II above, I respectfully disagree with part I in stating that defense counsel should be compelled to give reasons for his peremptory strikes when blacks have been excluded from the jury venire. The United States Supreme Court in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), applied the above requirement to prosecutors and not to defense counsel. While the Supreme Court has extended this requirement to defense counsel in civil cases,[*] that court has not applied this requirement to defense counsel in criminal cases and I see no reason to extend it any further. I also disagree with the majority's position that the trial court may conduct a Batson hearing ex mero motu when no Batson objections have been made.
PATTERSON, Presiding Judge, concurring in part; dissenting in part.
I concur in the decision of the majority to reverse the trial court's judgment and remand this case to the trial court for its failure to instruct the jury on the law of self-defense. There was sufficient evidence presented to raise the issue of self-defense, and the trial court erred to reversal in refusing to instruct the jury accordingly.
I dissent from that portion of the majority's opinion extending the ruling in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to the peremptory striking of blacks by the defendant. I am opposed to extending Batson to defense strikes in criminal cases, and I do not believe that the cases relied upon by the majority to support its conclusion dictate such an extension. That portion of the majority opinion approving the action of the trial court in conducting a Batson hearing sua sponte causes me much concern. The issues in a case should be formulated by the parties in an adversarial proceeding and not by the trial judge.
It is unnecessary for this court to address the Batson issue in this case, because we are reversing the judgment and remanding the case for a new trial anyway based on the failure of the trial court to instruct the jury on self-defense. I think we should abstain from addressing the Batson issue because there is no need to do so. The issue may not arise again in a new trial, and if it does, it would most certainly come to us with a different set of facts. Other reasons for not addressing this issue in this instance are that the order of the *76 trial judge is unclear and confusing, and he did not permit the defendant to fully present his reasons for his strikes.
NOTES
[1] See, e.g., United States v. Leslie, 783 F.2d 541, 565 (5th Cir.1986), vacated on related grounds, 479 U.S. 1074, 107 S.Ct. 1267, 94 L.Ed.2d 128 (1987) ("We note that every jurisdiction which has spoken to the matter, and prohibited prosecution case-specific peremptory challenges on the basis of cognizable group affiliation, has held that the defense must likewise be so prohibited"). See also People v. Wheeler, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748, 765 n. 29 (1978); State v. Neil, 457 So.2d 481, 487 (Fla. 1984); Chew v. State, 71 Md.App. 681, 527 A.2d 332, 336-37 (1987), vacated on related grounds, 317 Md. 233, 562 A.2d 1270 (1989); Commonwealth v. Soares, 377 Mass. 461, 387 N.E.2d 499, 517 n. 35, cert. denied, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); State v. Alvarado, 221 N.J.Super. 324, 534 A.2d 440, 442 (1987); People v. Kern, 75 N.Y.2d 638, 555 N.Y.S.2d 647, 554 N.E.2d 1235, 1246, cert. denied, ___ U.S. ___, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990). Cf. State v. Levinson, 71 Haw. 492, 795 P.2d 845 (1990) (defense counsel in wife-murder case may not deliberately pursue a pattern of excluding women from the jury).

The issue of whether Batson applies to the defense in a criminal case is now pending before the United States Supreme Court. See State v. McCollum, 261 Ga. 473, 405 S.E.2d 688, cert. granted, ___ U.S. ___, 112 S.Ct. 370, 116 L.Ed.2d 322 (1991).
[*] Edmondson v. Leesville Concrete Co., Inc., ___ U.S. ___, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).