607 So.2d 306 (1992)
Daniel Amos PILOT
v.
STATE.
CR 90-370.
Court of Criminal Appeals of Alabama.
February 28, 1992.
As Modified on Denial of Rehearing March 27, 1992.
*307 Jim Zeigler, Mobile, for appellant.
James H. Evans, Atty. Gen., and Ed Carnes, Robert Lusk and Chris N. Galanos, Asst. Attys. Gen., for appellee.
MONTIEL, Judge.[1]
On March 31, 1990, Daniel Amos Pilot, the appellant, shot Darren Jessie and Joseph O'Cain while they were sitting in a car parked in the parking lot of a Winn-Dixie grocery store in Theodore, Alabama. Jessie died and O'Cain was paralyzed as a result of the shootings. The appellant was indicted for the murder of Jessie and for the attempted murder of O'Cain. The jury found the appellant guilty of both offenses, and the trial judge sentenced the appellant to life imprisonment without parole for both offenses under the Habitual Felony Offender Act, with the sentences to run concurrently.

I
The victims in this case are black and the appellant is white. Prior to trial, the prosecution requested the court "to enter an order prohibiting [defense] counsel from exercising his peremptory strikes to remove black members from the jury solely because of their race, or, in the alternative, to enter an order mandating the defense's use of peremptory challenges be governed by the principles and guidelines applied to prosecutors in Batson v. Kentucky, 476 U.S. 79, [106 S.Ct. 1712, 90 L.Ed.2d 69] (1986), and Ex Parte Branch, 526 So.2d 609 (Ala.1977 [1987])." (R. 34.) The trial court then ordered that it would "prohibit racially motivated strikes by each side." (R. 38.)
After defense counsel used five of his seven peremptory strikes to remove blacks from the jury panel,[2] the trial court required defense counsel to give his reasons for removing those jurors. The trial court found that the reasons given by defense counsel for striking three of those five jurors were not race neutral. The trial court placed those three jurors back on the jury panel and then it randomly struck three other jurors who were in the group of twelve jurors originally selected to sit on the jury panel.[3] The appellant argues on appeal that his defense counsel should not have been required to give his reasons for striking the five black jurors. In Lemley v. State, 599 So.2d 64 (Ala.Crim.App.1992), this court, in an opinion authored by Judge Bowen, held that "the jury selection standards announced in Batson [v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) ], Powers [v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991),] and Edmonson [v. Leesville Concrete Co., Inc., ___ U.S. ___, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991),] also apply to the defense in a criminal case." Therefore, the court correctly required defense counsel to justify his strikes of the five black veniremembers after the prosecution had made a prima facie showing that defense counsel's removal of these jurors was discriminatory.

*308 II
The appellant contends that the trial judge erred by failing to grant his motion for a change of venue. He argues that he could not get a fair trial in Mobile County because of the extensive pre-trial publicity.
"There are two situations in which a change of venue is mandated. The first is when the defendant can show that prejudicial pre-trial publicity `has so saturated the community as to have a probable impact on the prospective jurors' and thus renders the trial setting `inherently suspect.' McWilliams v. United States, 394 F.2d 41 (U.S.C.A. 8th Cir.1968); Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). In this situation, a `pattern of deep and bitter prejudice' must exist in the community. Irvin v. Dowd [366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751], supra.
"The second situation occurs when the defendant shows `a connection between the publicity generated by the news articles, radio and television broadcasts and the existence of actual jury prejudice.' McWilliams v. United States, supra."
Nelson v. State, 440 So.2d 1130, 1131-32 (Ala.Crim.App.1983).
In support of his motion for change of venue, the appellant introduced six newspaper articles in which the appellant and his case were the main story[4]. Although some of the articles mentioned that this crime may have been racially motivated and that the appellant had been recently paroled at the time of this offense, the articles were basically factual and objective. Although coverage in six newspaper articles is more than most criminal cases receive, we cannot conclude that the number of articles alone constitutes extensive pretrial publicity. Furthermore, four of the six articles were published soon after this offense occurred and the other two articles were published several months before the trial began. The passage of time between the publicity concerning the crime and the trial of the defendant "`cannot be ignored as a factor in bringing objectivity to the trial.'" Robinson v. State, 430 So.2d 883, 886 (Ala.Crim.App.1983), (quoting Dannelly v. State, 47 Ala.App. 363, 254 So.2d 434, cert. denied, 287 Ala. 729, 254 So.2d 443 (1971)); Langham v. State, 494 So.2d 910 (Ala.Crim.App.1986). The appellant has not shown that the community was so saturated with inherently prejudicial pretrial publicity that he could not receive a fair trial in Mobile County.
We also find that the appellant did not show actual jury prejudice resulting from the pretrial publicity. The most effective way to demonstrate actual jury prejudice is through an extensive and thorough voir dire examination. Anderson v. State, 362 So.2d 1296 (Ala.Crim.App.1978). Here, the trial court conducted such an examination. The trial court asked general questions as to whether any of the jurors had heard anything about the case. Although 21 of the 30 prospective jurors indicated that they had some knowledge of the case, this fact alone does not mean that the appellant could not receive a fair trial. The trial court also asked the jurors if their knowledge of the case would cause them to have a fixed opinion about any aspect of the case. If any of the jurors gave a positive response to that question, the court then questioned them individually on this matter. The court questioned 15 or 16 jurors individually. Defense counsel was also given the opportunity to individually question the jurors about their knowledge of the case and whether their knowledge about the case would affect their verdict. The trial court granted all of defense counsel's challenges for cause.
The appellant has not shown a nexus between the pretrial publicity and the existence of actual jury prejudice. The trial court correctly denied the appellant's motion for change of venue.
The judgment of the trial court is affirmed.
AFFIRMED.
*309 BOWEN and McMILLAN, JJ., concur.
PATTERSON, P.J., and TAYLOR, J., dissent with opinions.
PATTERSON, Presiding Judge, dissenting.
I dissent from the majority's opinion, which again extends the ruling in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to the exercise of peremptory strikes by the defendant in a criminal case. As I stated in my dissent in Lemley v. State, 599 So.2d 64 (Ala.Cr.App. 1992), I do not believe that the cases relied upon by the majority to support its conclusion dictate or justify such an extension. Imposing Batson-like limitations on defense peremptories is neither required nor desirable. Such limitations would most certainly jeopardize fundamental protections for criminal defendants and would create an imbalance, favoring the prosecution over the defense. In Batson, the Supreme Court held that prosecutors may not use peremptory challenges to discriminate solely on the basis of race; however, the Court stopped short of banning discrimination completely. In most federal courts and in all but a few state courts, defendants may unrestrictedly use peremptory challenges, which might at times result in discrimination in the jury selection process. The majority of this court in the instant case and in Lemley have clearly adopted a minority view and one that jeopardizes the fairness of criminal trials. The United States and Alabama Supreme Courts have not extended the Batson rule to the peremptory challenges of criminal defendants and, in my opinion, this court should not do so.[5]
The peculiar facts of this case demonstrate the importance of not imposing Batson-like limitations on defense peremptories. The record in the instant case discloses that the appellant, who is white, shot two young black men as they sat in their automobile. One of the victims was shot in the head and died instantly. The other was shot in the back as he tried to flee, the bullet severing his spinal cord and rendering him permanently paralyzed from the waist down. The appellant apparently did not know his victims, and the act is, in my opinion, correctly characterized by the state as an unprovoked, racially-motivated assault. Shortly after the shooting, witnesses heard the appellant say that he had "just shot those two black motherfuckers" and refer to the victims as "niggers."
The racial aspects of the case and the racially explosive and offensive language, which was certain to come out during the trial, would naturally give rise to concern about the effect that such language would have on the black jurors. It is reasonable to conclude that the racial slurs, which equate with "fighting words," would be offensive to the black jurors and could affect their ability to remain impartial. The same reasoning would apply if the defendant were black and the victims were white if the defendant had used racially insulting and explosive language directed towards whites in referring to his victims. Arguments are made that the challenge for cause sufficiently protects the rights of the defendant and that peremptory strikes are unnecessary. I do not agree. The challenge for cause is so narrowly applied that it does not realistically assess subtle, unrecognized, or partial bias of a venireperson and, as far as a criminal defendant is concerned, it is an inadequate substitute for the peremptory challenge. To put a defendant in the position of having to ferret out evidence of racial bias by voir dire examination places too great a burden on him, and forces him to run the risk of incurring the resentment of the potential jurors by his inquiries.
Although we may wish otherwise, race is certainly not irrelevant in the jury selection process, particularly for a criminal defendant in a case such as this. To conclude otherwise ignores reality. While we as a society are striving to eliminate race from *310 playing a role in people's attitudes, beliefs, and views about other people and events, the painful truth is that we have not yet done so. For example, it is reasonable to conclude that race was a factor in the prosecutor's exercise of his strikes, because the prosecutor used all of his strikes to strike whites. It is unfair in a criminal case to assume that racial prejudices have been eliminated from our society and to consequently place the burden of our failure on the criminal defendant. That is exactly what the majority opinion does in the instant case. Without the unrestricted peremptory challenge, the defendant would have no way to minimize the possibility of facing a biased jury under such facts as are found in this case.

"Batson is premised on the view that peremptory challenges should serve only the function of securing an impartial jury. Its limitations therefore leave no room for peremptories based on intuitive dislike. For prosecutors, this is as it should be. For defendants, however, the limitations would deny what our criminal trial system has recognized up to now: that the procedure for selecting the jurors who will decide one's guilt or innocence of a criminal charge ought to permit peremptories based, not just on articulable suspicions of bias, but on unexplainable personal reaction as well."
K. Goldwasser, Limiting a Criminal Defendant's Use of Peremptory Challenges: On Symmetry and the Jury in a Criminal Trial, 102 Harv.L.Rev. 808, 831 (1989) (footnotes omitted).
In the instant case, the defense counsel would have a constitutional duty to use his peremptory strikes to minimize such bias. He would be constitutionally ineffective if he did not do so. Defense counsel should not have a responsibility to protect the right of a venireperson to serve on the trial jury. It is his responsibility to advance the individual interests of his client. When the right of a potential juror to serve on a trial jury clashes with the right of the defendant to strike that juror peremptorially for potential bias or dislike, the scales must be weighted on the side of the defendant, because he has the greatest stake in the outcomehis liberty and, possibly, even his life. The right of a potential juror not to be challenged because of race must give way to the right of the defendant to a jury unbiased beyond question when the facts of the case raise serious doubts as to the potential juror's impartiality due to race. The majority opinion in the instant case makes the right of the potential juror to serve on the jury paramount to the right of the defendant to a fair trial. We should hesitate before we adopt a rule that strips the defendants in criminal cases of fundamental procedural protections that have so long been a part of our criminal justice system. It may even be possible that, on the peculiar facts of a particular case, no members of some distinct group could be impartial, making the peremptory strike even more important. Here, the appellant was entitled to an unquestionably impartial and unbiased jury for the trial of his case. However, because he was denied the freedom to exercise his peremptory strikes it cannot be said that he had such a jury.
I would overrule the court's majority holding in Lemley, and would reverse this case and order a new trial, because I think the trial court committed reversible error in extending the rule in Batson to the peremptory strikes of defendants in criminal cases.
TAYLOR, Judge, dissenting.
I dissent from the majority in extending the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to defense counsel. It is one thing for an arm of the sovereign to discriminate against a person solely on the basis of race. It is quite another for an accused individual to be forced to limit his peremptory strikes. The accused bears the greater risk and should have the greater right. A parallel may be drawn to testimony of a confession. An agent of the sovereign cannot testify to a confession unless Miranda[6] warnings are first given. A private individual can testify to a confession made by an accused *311 without Miranda explanations. It is institutionalized discrimination that is prohibited by Batson. A balancing of the constitutional rights of an accused as against those of a potential juror mandate a different result.
NOTES
[1] Although Judge Montiel did not attend the oral argument of this case, he has listened to the tape recording of the oral argument and has studied the record.
[2] There were only six blacks on the venire.
[3] While we do not agree with the manner in which the trial court itself randomly struck the three jurors, this matter is not before this court for review. "An appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless presented and argued in brief. Ex Parte Riley, 464 So.2d 92 (Ala.1985)." Braxton v. Stewart, 539 So.2d 284 (Ala.Civ.App.1988).
[4] Although the record indicates that there was some television and radio coverage of this case, defense counsel did not submit evidence of any specific broadcasts.
[5] The Georgia Supreme Court in the recent case of State v. McCollum, 261 Ga. 473, 405 S.E.2d 688 (1991), cert. granted ___ U.S. ___, 112 S.Ct. 370, 116 L.Ed.2d 322 (1991), refused to apply Batson to criminal defendants. This case is now pending before the United States Supreme Court on certiorari.
[6] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).