MONTIEL, Judge.
The appellant, Joseph Dewey Akin, was indicted for murder in violation of § 13A-6-2, Code of Alabama 1975. A jury found Akin guilty as charged, and the trial court sentenced him to life in prison.
Akin argues that the trial court erred in failing to grant his motion for a Batson[1] hearing and in failing to grant his motion for a mistrial, both of which were based on what Akin says was the State’s racially discriminatory use of its peremptory challenges. Specifically, Akin argues that the State used all 20 of its strikes to remove white people from the jury. Akin is white; the victim, Robert Price, was black.
The record shows that the venire comprised 54 members, 18 (33%) of whom were black. The State struck 20 whites; the defendant struck 13 blacks and seven whites. The jury panel at that point consisted of five blacks and nine whites. The State then made a motion under Lemley v. State, 599 So.2d 64 (Ala.Crim.App.1992), contending that Akin used his peremptory challenges in a racially discriminatory manner to remove blacks from the jury.
The trial court ordered Akin’s counsel to state the reasons for his strikes. After hearing the reasons, the trial court held that defense counsel failed to give race-neutral reasons for four of its strikes, and ordered him to strike three white jurors and replace them with three black jurors, whom the trial court specified by name. Out of the presence of the jury, defense counsel said:
“MR. SHORT: I want to put it on the record. I just want to put a reverse Bat-son on the record. In this particular case, we would like the record to reflect that the defendant is white and the alleged victim is black. As I stated, I did not consider the composition of the jury in striking. We feel that this violates his Fourth, Fifth, Sixth and Fourteenth Amendment rights under the due process law.
“THE COURT: How is it violating his rights?
*75 “MR. SHORT: He has a right to a jmy of his peers and the court has put—
“THE COURT: What’s his peers?
“MR. SHORT: Everybody, but the same (inaudible) not arbitrarily striking, and I’ve seen prosecutors do this, arbitrarily strike black people where you have a black defendant and a white victim, (inaudible) violation of equal protection of law. I just want to put the reverse Bat-son—
“THE COURT: I’m not so much Batson as Lemley, when I say a juror has the right not to be discriminated against.
“MR. SHORT: Our position is that our peremptory strikes are totally within the discretion of the defendant and certainly not challenges for cause, but we should have a right to use peremptory strikes as he wishes.
“THE COURT: When that clearly points they haven’t used them in a legitimate manner, then I think it’s the duty of this Court. At any rate, you have an exception.”
The jury returned to the courtroom and was recognized as the correct jury by both defense counsel and the prosecution. The jury was dismissed for the night without being sworn. The next morning, before the jury was placed in the box and sworn, the following colloquy occurred:
“MR. SHORT: I have indicated to the Court in continuance of the matters we discussed regarding jury selection, the defendant moves to restrike the jury, or in the alternative for a mistrial, and sets forth the following grounds in support of this motion.
“Last night I reviewed the strikes and the racial composition of the jury and determined that the State exercised peremptory challenges — they had twenty peremptory challenges and they struck twenty white jurors. We would state that Mr. Akin is a member of a cognizable racial class and that he is white, and he has a right to have whites on the jury and not [be] struck for improper reasons.
“THE COURT: Anything else?
“MR. SHORT: No, sir.
“THE COURT: Does the State have anything?
“MR. LINTON: No, sir.
“THE COURT: First of all, Mr. Short, when this jury was struck the State moved the Court to come in chambers and allow them to discuss striking of the jury, basically Batson and Lemley. You said nothing. Is that not correct? You said nothing in regard to what you are saying now.
“MR. SHORT: Yes, sir.
“THE COURT: Is that not correct?
“MR. SHORT: Judge, I think — and that was the purpose of me being here this morning—
“THE COURT: No, I’m not asking you that. I’ll come back to that. But I’m saying when you made up the jury I asked did you have anything to say and you said nothing. Is that correct? You won’t answer, but I’ll tell you it is correct.
“MR. SHORT: That is correct.
“THE COURT: When we came in here the State, initially or close to it, first pointed out that you used thirteen of your strikes to strike within the eighteen total blacks we had. That is correct, is it not?
“MR. SHORT: Yes, sir.
“THE COURT: While statistical data itself isn’t controlling, it does lend some credence towards certain things. You then stated that the first eight you struck were white. This court pointed out to you at that point that if the State was correct, which it was, to use thirteen of your strikes, then you couldn’t have had eight strikes to strike whites first as you claimed. That would have been twenty-one strikes and you only had twenty.
“Now, in looking at what was done here, and more particular to you, that was the issue that was brought in here to me, you had four women who, in essence, this record will show, came in and asserted— among other things — that they basically had read the newspaper and had read some bad things and sort of had then-minds made up. The record will clearly show further that you continued to question them, and maybe once or twice Mr. Brown did. But you did. And they said it *76 would be difficult, but they could be fair and render a fair, just, and impartial verdict solely on what they heard out there in that courtroom and the instructions of law that this Court gave them, and leave out what they had read. So, therefore, it was my ruling that they would have been qualified to be selected from to sit.
“They turn out to be among the four of the seven whites that you struck. In addition to them you had Mr. B, who was a jailer at the Birmingham City Jail, who you struck. And you had Mr. C., who is a police officer, who you struck. So there are sis people of the seven whites you struck, if not more, that was almost mandated that you strike from the procedure that you used.
“So the only whites you struck, if any, were those that you were forced to strike from a trial strategy point leaving race out. I’ll hear you if you’ve got anything to say in response to that.
“MR. SHORT: Judge, we have nothing say in response to that.
“THE COURT: One other thing I would say. You further said in here that the effect of what happened in here put the defendant without a jury of his peers. Words to the effect without a jury of his peers. Of course, you never told me what his peers were. You later said something about all the people. And you further said that he was being tried by a jury which, considering his race, he then had a majority of jurors not of his race. And I believe this Court told you that I wasn’t interested in race in that concept, merely in the concept of how you go about when we take the rights of the defendant and the rights of the jurors, that no method is utilized that is clearly discriminatory based on race or without some rational basis from the method employed. And that’s the reason we have this.
“But to say that the racial make-up of the jury, there’s something wrong with the racial make-up of the jury when you’ve got more blacks on the jury and the defendant is white and the alleged victim is black, to say there’s something wrong with that jury would just be, it itself, to say there is something wrong with our whole jury system, and I don’t buy that. I told you yesterday and I tell you again, I’m more interested in protecting the integrity of the system because this country can’t exist unless people believe that the system is fair. Anybody else have anything to say, I’ll hear it. Otherwise, we are about to go forward.
“MR. SHORT: Nothing further.”
Defense counsel’s reverse Batson motion, while not artfully articulated, was timely, thus preserving this issue for our review. Before the jury was sworn, defense counsel pointed out that the State had used all of its peremptory challenges to strike whites.
This Court has held that Batson applies to the striking of white veniremembers by the prosecution. Williams v. State, 684 So.2d 1034 (Ala.Crim.App.1993); Rowe v. State, 625 So.2d 1210, 1213 (Ala.Crim.App.1993). In this case, the defendant is white, and the victim was black. The prosecution used all 20 of its peremptory challenges to strike white people from the jury. No blacks were struck by the State.
In Ex parte Thomas, 659 So.2d 3 (Ala.1994), the Supreme Court held that a defendant can establish a prima facie case of discrimination based on the percentage of strikes used to eliminate one race. The trial court should consider this factor in determining whether a prima facie case of discrimination has been established.
Therefore, we remand this cause to the trial court for an evidentiary hearing to determine whether Akin established a prima facie case of racial discrimination in the State’s exercise of its strikes. If the trial court finds that Akin established a prima facie case, the State must give its reasons for its strikes, and the trial court will determine whether those reasons are race neutral. The trial court is directed to file a return to this court within 60 days, and to include in that return any testimony taken, as well as the court’s written findings and conclusions.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.

. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).